IN THE COURT OF CRIMINAL
APPEALS

                                   OF TEXAS

 

                                                                              

                                                                NO.
AP-75,207



 

 

                              EX
PARTE JOSE ERNESTO MEDELLIN, Applicant

 

                                                                              



                          ON
APPLICATION FOR A WRIT OF HABEAS CORPUS

                                                      FROM
HARRIS COUNTY



 

 

Keller, P.J., filed a concurring opinion.

 

On behalf of the United States as amicus curiae, the
U.S. Attorney General=s office has taken the position that President Bush=s memorandum constitutes an order requiring this
Court to ignore rules of procedural default (including rules governing
contemporaneous objections at trial and statutes governing subsequent habeas
corpus applications) and evaluate anew whether applicant was prejudiced by a
failure to comply with the Vienna Convention on Consular Relations.  I conclude that the President of the United
States does not have the power to order a state court to conduct such a review.














  AAlthough the source of the President=s power to act in foreign affairs does not enjoy any
textual detail, the historical gloss on the >executive
Power= vested in Article II of the Constitution has
recognized the President=s >vast share of responsibility for the conduct of our
foreign relations.=@[1] 
Nevertheless, the executive=s power in this regard is not without limits, as it
must still be Aexercised in subordination to the applicable
provisions of the Constitution.@[2]  Among the
principles enshrined in the United States Constitution is that of federalism B the separate sovereignty of the state and federal
governments B embodied in the structure of the Constitution,[3]
as well as in the Tenth Amendment.[4]  Although federalism was Athe unique contribution of the Framers [of the U.S.
Constitution] to political science and political theory,@ there remains Amuch uncertainty respecting the existence, and the
content, of standards that allow the Judiciary to play a significant role in
maintaining the design contemplated by the Framers.@[5] 
Nevertheless, I agree with Justice Kennedy that Athe federal balance is too essential a part of our
constitutional structure and plays too vital a role in securing freedom for
[the judiciary] to admit inability to intervene when one or the other level of
Government have tipped the scales too far.@[6]  

In line with Justice Kennedy=s pronouncement, the United States Supreme Court has
increasingly stepped forward to prevent the national government from intruding
into the sphere of state power.  The
Court has adopted a general policy against federal injunctive interference with
the course of a pending state criminal prosecution.[7]  The Court has struck down Congressional enactments
relating to criminal justice that concerned traditional areas of state
authority[8]
and that imposed obligations on state officials with respect to a federal
regulatory scheme.[9]   Although the Court has not struck down a
treaty or an executive agreement for impermissibly intruding upon state
authority, it has in several instances construed such documents to avoid
preemption of state law where the state law in question involved a traditional
area of state competence and applied equally to citizens and non-citizens.[10]  








One of those instances regards the Vienna Convention
treaty itself; the Supreme Court has explicitly recognized that the treaty does
not preempt state rules of procedural default.[11]  To the extent that the President purports to
trump such state rules by the memorandum, then, he does not act pursuant to the
treaty=s authorization. 
Nor does he act according to the Optional Protocol, which gave the
International Court of Justice (ICJ) jurisdiction of disputes Aarising out of the interpretation or application of
the Convention@ but did not purport to confer jurisdiction regarding
the remedy to apply in the event the ICJ determined that a violation of
the treaty had occurred.[12]  Even if the ICJ had been authorized to craft
a remedy, however, that authorization surely could not include deciding which
level or organ of government would implement such a remedy; the latter would be
an internal matter for the party-nation itself to determine.








 Consequently,
the President must depend solely upon his inherent foreign relations power to
justify the action he has taken, and as a result, his action should be subject
to greater scrutiny.  It is true that the
President=s foreign relations power can accomplish the
preemption of state law through, for example, executive agreement.[13]  But the treaty process, with the requirement
that a supermajority of the Senate concur, 
is in the United States Constitution for a reason;[14]
Alexander Hamilton suggested in the Federalist Papers that the provision
operates as an important check on the President=s
power.[15]  I find it significant that this check is
exercised by the Senate, the organ of the national government most closely
aligned with the states. 








The Supreme Court has suggested that the proper
analysis for determining whether a president=s
exercise of his foreign relations power preempts state law is to determine
first whether the state has acted within an area of Atraditional state responsibility,@ and if it has, to assess the degree of conflict
with federal policy and the strength of the state interest involved.[16]  Unlike other federal preemption cases in
which a state has prevailed, we address here an express, stark conflict between
the President=s assertion of power (at least under the Justice
Department=s interpretation) and the state law at issue.   Nevertheless, given the principle that a
weighty state interest lessens the likelihood of federal preemption, it follows
that a president cannot use his foreign affairs authority to intrude into the
state arena with impunity: at some point, the national interest is served in
too attenuated a manner by the specific presidential action, and the state
interest intruded upon is too fundamental, to permit a president=s intervention.








Such a case is now before us.  Criminal justice is an area primarily of
state concern.  The Supreme Court has
repeatedly recognized that the AStates possess primary authority for defining and
enforcing the criminal law.@[17]  And states
have, to say the least, an overwhelming interest in the procedures followed in
their own courts.  In Younger, the
Supreme Court found that Aa proper respect for state functions@ counseled against injunctive interference by the
federal courts with the progress of a state prosecution.[18]  But the presidential memorandum attempts to
do something just as intrusive: it attempts to force the states to
conduct proceedings they would not otherwise conduct and to do so in a manner
inconsistent with their own procedures. 
The Supreme Court has itself refrained from engaging in this kind of Alawmaking.@[19]  Moreover,
the memorandum ignores Athe importance of the procedural default rules in an
adversary system.@[20]  These rules,
which are neutral B applying to everyone, not just foreign nationals B Aare designed to encourage parties to raise their claims
promptly and to vindicate the law=s important interest in finality of judgments.@[21]  When a
habeas petitioner asked the United States Supreme Court in Sanchez-Llamas
to exempt Vienna Convention claims from the rules of procedural default, the
Court responded that the relief requested was Aby any
measure, extraordinary.@[22]  The Court
observed that the exception to procedural default rules requested in that case
(as in this one) Ais accorded to almost no other right, including many
of our most fundamental constitutional protections.@[23]  The
President=s action here is unprecedented.

And such extraordinary action is not necessary.  The adversary system offers the foreign
national the opportunity to raise a Vienna Convention claim before or during
trial.  If he does so, the trial court is
in a position to afford an appropriate remedy B if a
judicial remedy is appropriate at all.[24]  If the foreign national is represented by
counsel, and counsel fails to raise the Vienna Convention issue in a timely
fashion, then a Asafety valve@ exists in the form of an ineffective assistance of
counsel claim that can be raised on an initial application for writ of habeas
corpus.  If all other avenues in the
state are exhausted, the foreign national can still apply to the Board of Pardons
and Parole and the Governor for executive clemency.  And the foreign national has the option to
litigate a habeas petition in the federal system.  

The President has made an admirable attempt to
resolve a complicated issue involving the United States= international obligations.  But this unprecedented, unnecessary, and
intrusive exercise of power over the Texas court system cannot be supported by
the foreign policy authority conferred on him by the United States Constitution.  As a consequence,  the presidential memorandum does not
constitute a new legal or factual basis for relief under Art. 11.071, '5, nor does it override '5=s requirements. 








            With these comments, I concur in the judgment
with regard to the analysis of the president=s
memorandum and otherwise join the Court=s opinion.

Keller, P.J.

Date
filed: November 15, 2006

Publish

 

 

 

 

 

 

 

 











[1]  American
Ins. Assn. v. Garamendi, 539 U.S. 396, 414 (2003)(quoting in part Youngstown
Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 610-611 (1952)(Frankfurter,
J., concurring)).





[2]  Id.
at 416 n. 9.





[3]  See U.S.
Const., Arts. I, '2 (members of the House of Representatives elected
by people Aof the several States@), '3 (Senate composed of two senators from each state),
'4 (time, place and manner of elections for
representatives and senators prescribed by each state), '10 (specific prohibitions against the states), II, '1 (states appoint presidential electors), IV, '1 (full faith and credit between states), '2 (privileges and immunities of citizens of the
states), '3 (admission of new states into the union), '4 (duties of U.S. to its states), V (state ratification
of amendments proposed by Congress).





[4]  U.S. Const.,
Amend X: AThe powers not delegated to the United States by the
Constitution, nor prohibited by it to the States, are reserved to the States
respectively, or to the people.@





[5]  United
States v. Lopez, 514 U.S. 549, 575 (1995)(Kennedy, J., concurring).           





[6]  Id.
at 578.





[7]  Younger
v. Harris, 401 U.S. 37, 45-54 (1971)(abstention doctrine).





[8]  Lopez,
514 U.S. 549 (striking down law criminalizing possession of a firearm in a
gun-free school zone); United States v. Morrison, 529 U.S. 598
(2000)(invalidating statutorily-created civil cause of action for victims of
gender-motivated violence).





[9] Printz v. United States, 521 U.S. 898 (1997)(striking provision requiring
state and local law enforcement officials to conduct background checks on
prospective handgun purchasers).





[10]  Todok v.
Union State Bank, 281 U.S. 449, 454-455 (1930)(treaty of amity and commerce
did not preempt Nebraska homestead law); Guaranty Trust Co. v. United States,
304 U.S. 126, 142-143 (1938)(executive agreement with the Soviet Government
assigning economic claims did not preempt New York statute of limitations); Sanchez-Llamas
v. Oregon, 126 S. Ct. 2669, 2682-2688 (2006)(Vienna Convention treaty does
not preempt state rules of procedural default).





[11]  Sanchez-Llamas,
supra.





[12]  Under the
ICJ statute, four different topics can be made subject to the international
court=s compulsory jurisdiction: 

 

a. the interpretation of a treaty; 

 

b. any question of international law; 

 

c. the existence of any fact which, if established would constitute a
breach of an international obligation, 

 

d. the nature and extent of the reparation to be made for the breach
of an international obligation.@ 

 

Statute of the Court of
International Justice, Art. 36, '2 (emphasis added). 
The Optional Protocol subjects to the ICJ=s
compulsory jurisdiction only A[d]isputes arising out of the interpretation or
application of the Convention.@ Optional
Protocol to Vienna Convention on Consular Relations Concerning the Compulsory
Settlement of Disputes, Art. I (emphasis added).





[13]  Garamendi,
539 U.S. at 416 (AGenerally, then valid executive agreements are fit
to preempt state law, just as treaties are,@ but
see caveat referenced earlier in this opinion and cited in footnote 2).





[14]  See U.S.
Const., Art. II, '2 (AHe shall have Power, by and with the Advice and
Consent of the Senate, to make Treaties, provided that two thirds of the
Senators present concur@).





[15]  Alexander
Hamilton, Federalist Papers, No.
75.





[16]  Garamendi,
539 U.S. at 420, 420 n. 11.





[17]  Lopez,
514 U.S. at 561 n. 3 (quoting Brecht v. Abrahamson, 507 U.S. 619, 635
(1993)(quoting Engle v. Isaac, 456 U.S. 107, 128 (1982))).





[18]  401 U.S. at
44.





[19]  Sanchez-Llamas,
126 S. Ct. at 2680 (Awhere a treaty does not provide a particular remedy,
either expressly or implicitly, it is not for the federal courts to impose one
on the States through lawmaking of their own@),
2687 (The petitioner Aasks us to require the States to hear Vienna
Convention claims raised for the first time in state postconviction
proceedings.  Given that the convention
itself imposes no such requirement, we do not perceive any grounds for us to
revise state procedural rules in this fashion.@)(emphasis
in original).





[20]  Id.
at 2685.





[21]  Id.





[22]  Id.
at 2687.





[23]  Id.
at 2688.





[24]  See Id.
at 2680 (expressing doubt about the appropriateness of a judicial remedy).